IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-05-632 |
| BETTY J. MORROW, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | |
|---|---|
| SINGER ASSET FINANCE COMPANY, L.L.C., | * |
| | * |
| Cross-Claimant, | * |
| v. | * |
| BETTY J. MORROW, *et al.*, | * |
| Cross-Defendants. | * |
| | * |

**MEMORANDUM OPINION**

This interpleader action was brought by Fidelity and Guaranty Life Insurance Company ("F&G Life") against Betty J. Morrow ("Morrow"), Singer Asset Finance Company, L.L.C. ("Singer"), and United States Fidelity and Guaranty Company ("USF&G") in order to resolve a dispute over certain annuity payments it originally owned to Morrow.  Singer filed a Cross-Claim against Morrow alleging that it is entitled to the annuity payments pursuant to a separate loan agreement with Morrow.  Singer seeks a declaratory judgment that its loan agreement with Morrow is enforceable, as well as damages for breach of contract, conversion, fraud, and unjust enrichment.  Pending before this Court is Singer's Motion for Summary Judgment as to its

Cross-Claims against Betty J. Morrow.  This Court has jurisdiction over the interpleader matter pursuant to 28 U.S.C. § 1335 and over the Cross-Claim pursuant to 28 U.S.C. § 1332.[1]  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Singer's Motion for Summary Judgment is GRANTED as to Count I, GRANTED in part and DENIED in part as to Count IV, and DENIED as to Counts II, III, and V.

## BACKGROUND & PROCEDURAL HISTORY

Although the facts are viewed in a light most favorable to Morrow as the nonmoving party, they are essentially undisputed.  Pursuant to a settlement agreement between Cross-Defendant Betty J. Morrow[2] and an insured of United States Fidelity and Guaranty Life Insurance Company ("USF&G") in 1984, Morrow was to receive four lump sums from USF&G: $10,014.38 due November 1, 1994; $23,707.55 due November 1, 2004; $48,169.35 due November 1, 2014; and $86,264.68 due November 1, 2024.  (Barnett Aff. Ex. 1.)  In order to satisfy its obligation under the settlement agreement, USF&G purchased an annuity contract, Policy No. I386982 ("the Annuity"), from Fidelity and Guaranty Life Insurance Company

---

[1] In order for this Court to have jurisdiction over this Cross-Claim, the parties must be citizens of different states and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332.  Morrow is a citizen of Mississippi, Singer is a Delaware limited liability company, and USF&G is a Maryland company with its principal place of business in St. Paul, Minnesota.  (*See* Pl.'s Mem. Supp. Summ. J. Ex. 6; Barnett Aff. Ex. 4; USF&G's Answer ¶ 4.)  As to the amount in controversy, while the contract payment in question is less than $75,000, Singer is also seeking compensatory and punitive damages for its fraud, conversion, and unjust enrichment claims.  Accordingly, the total amount in controversy exceeds $75,000.

[2] Ms. Morrow was known by multiple names throughout the course of these events, including Betty J. Ingle, Betty J. Bueso, Betty Arrington Ingle, and Betty A. Bueso.  For the purposes of this Memorandum Opinion, she will simply be referred to by her name at the time this lawsuit was filed: Betty J. Morrow.

("F&G Life").  (*Id.* at Ex. 2.)  The Annuity was to pay the four lump sums set forth in the

settlement agreement to Morrow.  (*Id.*)  The first Annuity payment was made to Morrow as

scheduled in 1994.  (Interpleader Compl. ¶ 10.)

On April 19, 1999, Morrow entered into a loan agreement ("the Loan Agreement") with

Merrick Bank Corporation ("Merrick") pursuant to which Merrick loaned her $8,366, which she

was to repay in the form of one lump payment of $20,000 on November 1, 2004, the same day

on which she was to receive her second of four lump sum payments pursuant to the Annuity.

(*See* Barnett Aff. Ex. 3.)  This payment was to be in the amount of $23,707.55.  (*Id.* at Ex. 1.)

As collateral, Merrick secured an interest in Morrow's November 1, 2004 Annuity payment.[3]

(*Id.* at Ex. 4, UCC Financing Statement.)  Included in the terms of the Loan Agreement was a

representation by Morrow that she was competent to enter into the contract.  (*Id.* at Ex. 3, ¶ 4.f.)

In addition, Morrow agreed that she would not make any changes in her instructions to F&G

Life regarding the Annuity.  (*Id.* at Ex. 3, ¶ 5.d.)  Merrick simultaneously assigned the Loan

Agreement to Cross-Claimant Singer Asset Finance Company, L.L.C. ("Singer").[4]  (*See id.* at

Ex. 4.)  According to F&G Life, "[n]either Singer nor Morrow notified F&G Life of the

purported transfer."  (Interpleader Compl. ¶ 10.)

By letter dated June 21, 2004, Morrow notified F&G Life that she wished to change her

last name, mailing address, and beneficiaries on the Annuity policy.  (Interpleader Compl. ¶ 13

---

[3] Singer apparently contends that it has an interest in *all* of Morrow's Annuity payments as collateral, but that is an issue of fact.

[4] Although the exact date on which this transaction took place is not clear from the actual Assignment Agreement, the Loan Agreement's Terms Rider indicates that Singer is Merrick's assignee.  (Barnett Aff. Ex. 3, Terms Rider ¶ 1.)

& Ex. D.)  However, Morrow did not notify Singer that she had submitted a change in address to F&G Life.  (Barnett Aff. ¶ 20.)  Thus, F&G Life sent the November 1, 2004 Annuity payment to Morrow at the updated address.  (*Id.* ¶ 21.)  Morrow did not forward the $20,000 payment owed to Singer as required by the Loan Agreement on November 1, 2004.  (*Id.* ¶ 22.)  Singer's counsel sent a letter to F&G Life explaining that Morrow had breached her agreement and demanded that all "future payments under the Annuity be made directly to Singer until all sums properly due have been paid to Singer."  (Interpleader Compl. Ex. F.)

On March 4, 2005, F&G Life filed an interpleader action in this Court against Morrow, Singer, and USF&G to determine the rightful recipient of the Annuity payments.  On March 10, 2005, this Court ordered that the three defendants pursue claims amongst themselves to decide their respective rights and claims.  (Paper No. 5.)  On May 25, 2005, Singer filed a Cross-Claim against Morrow and USF&G, seeking a declaratory judgment that it is entitled to the Annuity payments pursuant to the Loan Agreement rather than Morrow or USF&G, as well as damages from Morrow for breach of contract, conversion, fraud, and unjust enrichment.  (Paper No. 9.)  Counsel for Singer certified that a copy of the Summons and Cross-Claim was mailed to Morrow on May 25, 2005 (Paper No. 10).  Having not heard any response from Morrow, Singer moved for an entry of default against her on September 12, 2005.  (Paper No. 15.)  This Court denied the motion on the grounds that Morrow had not been served in person, as required by Rule 4(e)(2) of the Federal Rules of Civil Procedure.  (Paper No. 16.)  Ultimately, on January 12, 2006, Morrow was personally served.  (Bristow Aff. ¶ 4.)

On January 27, 2006, Morrow sent a letter to this Court essentially saying that she was "wrong for spending this money owed to Singer" (Pl.'s Mem. Supp. Summ. J. Ex. 6) but did not

file a formal answer to the Cross-Claim.  On July 27, 2006, Singer forwarded several discovery

requests to Morrow, including Requests for Admissions, Interrogatories, and Requests for

Production.  (*Id*. at Exs. 9-11.)  Morrow did not respond to any of the requests aside from filing

with the Court a compilation of medical records and a letter indicating that she was "not able to

be making wise judgments" at the time she entered into the contract with Merrick.  (Paper No.

43.)  Singer filed a Motion to Compel on September 22, 2006.  (Paper No. 44.)  This Court

granted the Motion to Compel Responses to Discovery Requests on October 13, 2006, ordering

Morrow to produce the requested discovery within 30 days.  (Paper No. 48.)  A failure to comply

with the October 13, 2006 Order would result in "her being precluded from opposing Singer's

claim and introducing materials into evidence in opposition to its claim."  (*Id*.)  Morrow did not

submit any discovery to Singer.  (Bristow Aff. ¶ 16.)

On December 8, 2006, Singer moved for summary judgment on the grounds that Morrow

had not complied with this Court's October 13, 2006 Order and that, therefore, she could not

present any evidence to create a genuine issue of material fact.  (Paper No. 51.)

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).

## ANALYSIS

Singer Asset Finance Company, L.L.C. has moved for summary judgment on the grounds that Betty J. Morrow cannot present any evidence that would create a genuine issue of material fact.  Pursuant to this Court's Order of October 13, 2006, Morrow was required to comply with Singer's discovery requests within 30 days and she failed to do so.  Her failure to comply with this Court's Order precludes her from submitting evidence in opposition to Singer's claims.  However, each Count of the Cross-Claim will be examined in light of the evidence before this Court to determine whether there are in fact any genuine issues of material fact and whether Singer is entitled to judgment as a matter of law.

I.      **Count I: Breach of Contract**

Singer's first cause of action is for breach of contract.  As an initial matter, this Court

must determine which state's substantive law governs the Loan Agreement.  Ordinarily, in

diversity actions, a federal district court applies the substantive law of the state in which it sits.

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Thus, this Court must apply Maryland law.

However, under Maryland's choice of law rules, the State "favor[s] the enforcement of choice of

law provisions in contracts." *Tomran, Inc. v. Passano*, 891 A.2d 336, 351 n.2 (Md. 2006) (citing

*Kronovet v. Lipchin*, 415 A.2d 1096, 1104 (Md. 1980) ("It is now generally accepted that the

parties to a contract may agree as to the law which will govern their transaction, even as to issues

going to the validity of the contract.").  In this case, the Loan Agreement provides that the law of

Utah is to be applied in the event of a dispute.  (*See* Barnett Aff. Ex. 3, ¶ 13.)  Accordingly, this

Court will apply the State of Utah's contract law.[5]

Under Utah law, "[t]he elements of a *prima facie* case for breach of contract are (1) a

contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other

party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).  As to the

first element, there is clearly a written agreement in this case between Morrow and Singer, by

means of an assignment from Merrick Bank Corporation, pursuant to which she assigned her

---

[5] Maryland also recognizes the doctrine of *lex loci contractus*, "which requires that the construction and validity of a contract be determined by the law of the state where the contract was made." *Commercial Union Ins. Co. v. Porter Hayden Co.,* 698 A.2d 1167, 1199 (Md. Ct. Spec. App. 1997).  Under the Restatement approach adopted in Maryland, the state of contracting is "'the place where occurred the last act necessary under the forum's rules of offer and acceptance to give the contract binding effect. . . .'" *Id* (quoting Restatement (First) of Conflict of Laws § 332).  There is simply not enough evidence in the record to determine where the last act of contract formation occurred, but even if there were, basic contract interpretation principles in Mississippi and Delaware do not conflict with those of Utah.

2004 Annuity payment.  (*See* Barnett Aff. Ex. 3.)  However, Morrow alleges that she lacked

capacity to enter into the Loan Agreement with Merrick.  Under Utah law, parties to a contract

are presumed competent, "unless proof to the contrary is presented."  *Anderson v. Brinkerhoff*,

756 P.2d 95, 99-100 (Utah Ct. App. 1988).  Specifically, "[m]ental incompetency must be

established by clear, cogent, satisfactory, and convincing evidence."  *Id*. at 100.  In this case, the

only evidence on the record in support of Morrow's claim of incapacity are the medical records

and prescription bills she submitted to this Court on September 21, 2006.  (*See* Paper No. 43.)

However, these documents alone do not present a "clear" or "cogent" picture of whether Morrow

was competent to enter into the Loan Agreement with Merrick, because they all appear to be

dated 1995, 1996, 2001, and 2002.  (*Id*.)  It is well-established that "capacity is measured at the

time of the execution of the contract."  *Anderson*, 756 P.2d at 100 (citation omitted).  The only

evidence from 1999 is the Loan Agreement itself, which contains a clause whereby Morrow

represented that she was competent.  (Barnett Aff. Ex. 3, ¶ 4.f.)  In addition, Morrow has

communicated to this Court indicating that she recognized "right from wrong" and knew that she

had an obligation to comply with the contract with Singer.  Thus, Morrow has not shown that she

lacked capacity to enter into the Loan Agreement.

As to the rest of the *prima facie* elements, there is no contention that Morrow did not

receive the $8,366 loan she requested in satisfaction of Singer's (and Merrick's) performance.

Thus, the only element at issue is whether Morrow breached her obligation under the contract.

Morrow clealry did not make the $20,000 payment on November 1, 2004 to Singer, nor did she

have the Annuity payment of November 1, 2004 forwarded to Singer, as required by the Loan

Agreement.  In fact, she admitted in a correspondence with this Court that she was "wrong for

spending this money owed to Singer." (Pl.'s Mem. Supp. Summ. J. Ex. 6.)  All of the evidence

shows that Morrow breached the Loan Agreement, and Singer suffered $20,000 damages as a

result.  Thus, Singer has satisfied all the elements of a *prima facie* case for breach of contract

under Utah law[6] and is entitled to summary judgment in the amount of $20,000 in fulfillment of

the Loan Agreement.

## II.      Count II: Conversion

Singer's second cause of action is for the tort of conversion.  In tort actions, Maryland

recognizes the doctrine of *lex loci delicti*.  *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md.

2006).  Under that principle, "where the events giving rise to a tort action occur in more than one

State, we apply the law of the State where the injury - the last event required to constitute the tort

- occurred."  *Id*.  In this case, Singer alleges that it suffered injury when it did not receive

$20,000 payment from Morrow on November 1, 2004.  Accordingly, Singer's injury occurred in

Delaware, its state of citizenship, and this Court will apply Delaware law to its tort claims.[7]

---

[6] Morrow appears to raise the defense of coercion in her response to Singer's Motion for Summary Judgment (Paper No. 53) and in a letter she sent to the Court in May of 2006 (Paper No. 38).  She alleges that a Singer employee told her what to say to USF&G when she was setting up the Loan Agreement and stayed on the line while she did so.  (Paper No. 38.)  Not only do Morrow's correspondences fail to provide any specific allegations regarding the content of her interactions with Singer, but also her unsworn arguments are not sufficient to create a genuine issue of material fact as to her claim under Rule 56(c) of the Federal Rules of Civil Procedure.

[7] The outcome would be the same under Maryland or Mississippi law, as well.  *See Darcars Motors of Silver Spring v. Borzym*, 818 A.2d 1159, 1169 (Md. Ct. Spec. App. 2003) ("'[C]onversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it."); *Cmty. Bank v. Courtney*, 884 So. 2d 767, 772-773 (Miss. 2004) ("[T]o make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owners right, or of an unauthorized and injurious use, or of a wrongful detention after demand.") (citation omitted).

"Conversion is the 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'" *McGowan v. Ferro*, 859 A.2d 1012, 1040 (Del. Ch. 2004) (quoting *Arnold v. Society for Sav. Bancorp, Inc*., 678 A.2d 533, 536 (Del. 1996)).  To prove the tort of conversion under Delaware law, Singer must show that "at the time of the alleged conversion (a) [it] had a property interest in the collateral, (b) [it] had a right to possession of the collateral, and (c) there was a conversion." *Facciolo Const. Co. v. Bank of Del.*, 514 A.2d 413, 413 (Del. 1986).  Pursuant to the Loan Agreement, which this Court has found to be enforceable, Singer had a security interest in Morrow's November 1, 2004 Annuity payment in the event she could not produce $20,000 from her own funds.  (Barnett Aff. Ex. 3, ¶ 2 & Terms Rider.)  Singer perfected its security interest by filing a financing statement.  (*See id.* at Ex. 4, UCC Financing Statement.)  However, there is a genuine issue of material fact as to whether Singer was entitled to the *possession* of the November 1, 2004 Annuity payment in the event Morrow failed to repay the promised $20,000.  The Loan Agreement provides that in the event the funds from the Annuity were "denied, diverted, sett off, delayed, or withheld from [Singer]" Morrow would have to pay the full $20,000 within ten days of Singer's demand, but it does not specify in what form that payment must come.  (Barnett Aff. Ex. 3, ¶ 5.f.)  Accordingly, Plaintiff's Motion for Summary Judgment is DENIED as to Count II.

### III.    Count III: Fraud

Count III of the Cross-Claim purports to state a cause of action for fraud.  Under Delaware law, fraud requires a showing that "(1) the defendant falsely represented or omitted

facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *DCV Holdings, Inc. v. ConAgra, Inc*., 889 A.2d 954, 958 (Del. 2005).  In its Motion for Summary Judgment, Singer does not raise any arguments why it is entitled to summary judgment on the fraud claim.  However, based on the record before this Court, there are genuine issues of material fact as to whether Morrow made any false representations when she entered into the Loan Agreement with Merrick and whether the bank and Singer justifiably relied on any alleged misrepresentations.  Accordingly, Singer's Motion for Summary Judgment is DENIED as to Count III.

## IV.     Count IV: Declaratory Judgment

In Count IV of the Cross-Claim, Singer requests a declaratory judgment, pursuant to 28 U.S.C. §§ 2201, *et seq*., that the Loan Agreement is valid and that Singer is entitled to recover payments Morrow is to receive under the Annuity as well as attorney's fees and costs.  This Court declares that the Loan Agreement is valid and enforceable to the extent that Morrow owes Singer $20,000 plus costs.  However, Singer is not entitled to receive the remaining two Annuity payments, due November 1, 2014 and November 1, 2024, or attorney's fees.  Accordingly, Singer's Motion for Summary Judgment is GRANTED in part and DENIED in part as to Count IV.

## V.      Count V: Unjust Enrichment

Finally, in Count V, Singer alleges that Morrow was unjustly enriched.  In Delaware,

11

> [u]njust enrichment is the unjust retention of a benefit to the loss of
> another, or the retention of money or property of another against the
> fundamental principles of justice or equity or good conscience.  The
> elements of unjust enrichment are: (1) an enrichment, (2) an
> impoverishment, (3) a relation between the enrichment and
> impoverishment, (4) the absence of justification and (5) the absence
> of a remedy provided by law.

*Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (citations and internal

quotation marks omitted).  Although it is clear that Morrow benefitted from retaining the

$20,000 she owed Singer and that Singer sustained damages by lending over $8,300 and not

receiving $20,000 as promised, there are genuine issues of material fact as to whether these

constitute "enrichment" and "impoverishment," respectively.  In addition, it is clear that the

Loan Agreement between the parties provides a remedy for Singer.  Delaware courts have held

that recovery under a theory of unjust enrichment is inappropriate where the parties' rights and

obligations are governed by a contract.  *See, e.g., Wood v. Coastal States Gas Corp*., 401 A.2d

932, 942 (Del. 1979) ("Because the contract is the measure of plaintiffs' right, there can be no

recovery under an unjust enrichment theory independent of it."); *MetCap Securities LLC v. Pearl

Senior Care, Inc*., Civ. A. No. 2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007)

(quoting *Wood*, 401 A.2d at 942) ("[I]f there is a contract between the complaining party and the

party alleged to have been enriched unjustly, then the contract remains 'the measure of [the]

plaintiffs right.'").  Accordingly, Singer's Motion for Summary Judgment is DENIED as to

Count V.

<u>CONCLUSION</u>

For the foregoing reasons, Singer Asset Finance Company, L.L.C.'s Motion for Summary

Judgment is GRANTED as to Count I, GRANTED in part and DENIED in part as to Count IV,

and DENIED as to Counts II, III, and V.  A separate Order follows.


Date: July 9, 2007                                   /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge